IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter 7 |
| | ) No. 09 B 03825 |
| CURRENCY MANAGEMENT CO. | ) |
| Ltd., an Illinois Corporation, | ) Judge Pamela Hollis |
| | ) |
| Debtor. | ) |

**Memorandum Opinion**

This matter is before the court on Creditor Matt's Landscaping Contractors, Ltd.'s Motion for Sanctions against the debtor's attorney, Cora Thompson-Burks pursuant to Bankruptcy Rule 9011. The court permitted Matt's and attorney Thompson-Burks to conduct discovery prior to holding an evidentiary hearing on May 6, 2010. After consideration of the evidence and law, the court concludes that sanctions are appropriate for counsel's attempt to relitigate a state court dispute in this bankruptcy but are not warranted for filing proofs of claims.

**Findings of Fact**

1. On or about December 20, 2006, Matt's sued Currency Management Company, Ltd. (the debtor in this case) in the Circuit Court of Cook County for Currency's alleged failure to pay for snow removal services. That action is currently pending as Case No. 06 MI 176326.

2. Attorney Thompson-Burks represents Currency in that state court action. On March 11, 2008, Judge Laurence J. Dunford entered an order barring Currency from calling any witnesses or introducing evidence in the state court action for its failure to comply with Illinois Supreme Court Rule 222 discovery disclosures and the court's order of September 19, 2007.

3. On September 19, 2008, Judge Francis J. Dolan set February 9, 2009 as a firm trial date for the state court action and entered an order barring Currency from presenting witnesses or evidence at trial.

4. Just three days before the trial in state court was to begin, on February 6, 2009, Currency, by its attorney Thompson-Burks, filed this Chapter 7 bankruptcy.

5. Currency obtained an extension of time to file schedules from this court until April 7, 2009. Schedules were filed late on April 9, 2009, and listed Matt's as the only creditor. Matt's claim was marked as disputed.

6. The creditors' meeting pursuant to 11 U.S.C. § 341 was continued to April 22, 2009. On that same day, Currency filed amended schedules reflecting an additional $10,000 of cash on hand. It is not clear whether this amendment occurred before or after the creditor's meeting held by the Chapter 7 trustee.

7. On April 23, 2009, the trustee filed a "no asset" report in this case. On that same day he withdrew the finding of no assets and filed an initial report of assets. The deadline for filing proofs of claims was fixed at July 24, 2009.

8. On the last day of the claims bar date, debtor's attorney Thompson-Burks filed three proofs of claims. Claim #2 was filed by her for the Law Office of Grady, Pilgrim, Christakis and Bell LLP in the amount of $2,450.00. Claim #3 was filed by her for the Law Offices of William G. Uelsmann for $350.00[1]. Claim #4 was filed by her for the Law Offices of Joseph P. Selbka in the amount of $1,035.00. In all three claims, Ms. Thompson-Burks clearly

---

[1] The amount is difficult to read from the court's copy of the proof of claim #3, so the actual amount filed may vary from what is reported here. However, the amount is not material to this court's ruling.

indicated she represented the debtor in filing these claims and not the creditors. (See checked box at top right of each of the three claims.)

9. The trustee objected to all three of the claims filed by debtor's attorney. Additionally, the Law Office of Grady, Pilgrim, Christakis and Bell LLP brought a motion for leave to withdraw claim #2 filed in their name on the basis that it was unauthorized. On or about December 1, 2009, this court disallowed all three claims and simultaneously granted the motion to withdraw claim brought by the Grady law firm. Attorney Thompson-Burks appeared for the debtor but did not contest the claims objections or the motion to withdraw.

10. In the meantime, on September 14, 2009, attorney Thompson-Burks filed debtor's motion to disallow Claim #1, which was asserted by Matt's for snowplow services referred to in the pending, but stayed, state court action against Currency. Currency's objection alleged it had standing to object to Matt's claim, since if the claim were disallowed, there would be a surplus of funds available for distribution to Currency.

11. On November 5, 2009, Matt's filed this motion for sanctions against attorney Thompson-Burks, alleging that she violated Bankruptcy Rule 9011 by filing false proofs of claims and by misusing the bankruptcy process to re-litigate Matt's claim in this forum, as opposed to the state court where she was twice barred from introducing evidence or witnesses. The motion states in part: "While it is difficult to believe why a lawyer would conduct herself like this, it is likely that Attorney Burks seeks to cover up for what is apparent malpractice in the underlying case." Motion for Sanctions, par. 7.

12. Also on November 5, 2009, Matt's filed a motion to lift the automatic stay so that the state court action could proceed to trial. After reviewing the submissions from both counsel, this court concluded there was cause to lift the automatic stay. On February 18, 2010, this

3

court issued an order permitting the state court action to proceed. This motion for sanctions was set for trial on May 6, 2010.

13. Upon consideration of the evidence, testimony, and argument during the May 6, 2010 hearing, the court finds that the three proofs of claims filed by attorney Thompson-Burks were for legal services provided to attorney Thompson-Burks directly. The three law firms considered her their client, and not Currency Management. Engagement letters from two of the law firms clearly showed Ms. Thompson-Burks to be the client. The three law firms providing services to her expected, and did look to her, for payment of their attorney fees. During the hearing, attorney Thompson-Burks also acknowledged that she was the client of these three law firms for purposes of asserting the attorney client privilege.

14. Attorney Bell from the Grady law firm also testified, and this court finds, that attorney Thompson-Burks consulted him about filing a claim in the Currency bankruptcy. He indicated on the phone to her that she was not authorized to file the claim, because she, and not Currency, was his client.

15. However, Mr. Bell also testified, and this court finds, that the work he performed for attorney Thompson-Burks was preparation of loan documents for Currency. Therefore, while he understood attorney Thompson-Burks to be his client, he also acknowledged that his legal work was assisting her with her client, Currency Management Company.

16. Attorney Joseph P. Selbka testified and this court finds that 90 to 95% of the work he performed for his client attorney Thompson-Burks involved Currency Management. Nevertheless, all of his communication was with her and he had no contact with Currency Management. They worked together on at least 20 projects, and Mr. Selbka always received payment from attorney Thompson-Burks.

17.     Dan Kravitz, President of Currency, could not recall specifically consenting to attorney Thompson-Burks hiring attorneys Bell and Selbka to help her with Currency's legal projects. He did say he might have consented to attorney Uelsmann, the subject of proof of claim #3. He later testified that attorney Thompson-Burks had authority to hire Selbka when earlier he could not recall. While Mr. Kravitz was at best unclear on whether he gave consent to hire specific attorneys, he did state that attorney Thompson-Burks had authorization to hire attorneys as she saw fit so long as the terms were reasonable. He also testified that he considered Currency responsible for the fees incurred when she delegated work to other attorneys, since they were helping with Currency projects.

18.     Attorney Thompson-Burks testified on her own behalf. She stated that she read 11 U.S.C. § 501(b) and Bankruptcy Rule 3004 as permitting her to file a claim for a potential creditor. Moreover, her research indicated she did not need authorization to do so. Although she was the direct client and primarily responsible to pay claims 2-3, virtually all the work done to earn those fees was for the debtor Currency. Fearing that Currency might also be held liable, and citing to an old, almost indecipherable case to support the point,[2] she believed she was acting properly in filing claims for these law firms on the last day of the claims bar date.

19.     Section 501(b) of the Bankruptcy Code states:

> If a creditor does not timely file a proof of such creditor's claim, *an entity that is liable to such creditor with the debtor*, or that has secured such creditor, may file a proof of such claim.

---

[2] Sabath et al v. Vacek, 204 Ill. App. 396 (Ill. App. Ct. 1917) does have some language to suggest joint liability when the company consents to delegation of the work to another attorney. However, the case actually held that the attorney employed as a subcontractor by the company's attorney *cannot* collect from the company when the company had no knowledge that its attorney subcontracted the work to another law firm. Here, however, there was some evidence that Currency did consent to delegation in a general fashion.

5

(Emphasis added).

20. Bankruptcy Rule 3005 implements this provision by stating that the entity jointly liable with the debtor has an additional 30 days from the claims bar date to file the proof of claim if the creditor does not. Bankruptcy Rule 3004 permits the debtor or trustee to do the same thing. None of these provisions require the non-filing creditor to *authorize* the filing.[3]

21. This court concludes that these provisions, coupled with attorney Thompson-Burks' reasonably based belief that Currency might be jointly liable with her for the legal fees incurred for Currency legal work, defeats Matt's contention that these were "false" and "malicious" claims.[4] Moreover, attorney Thompson-Burks made no effort to contest the trustee's objections to these claims, as she pointed out during the sanctions hearing, although she still believes she had a valid basis for filing the claims. It appears to the court that if attorney Thompson-Burks had a strategic reason for filing these claims other than just "belt and suspenders" disclosure, she would have stood her ground. However, her behavior of not

---

[3] It should be noted that the code and rules technically allow a debtor or another to file a creditor's claim *after* the bar date and not on the bar date. However, for purposes of considering whether a fraud was perpetrated, the court finds the filing of the claims on the bar date sufficient to invoke these statutes as a defense to allegations of attorney dishonesty. Thirty days from the bar date could have been construed by attorney Thompson-Burks to begin running on the bar date instead of the day after.

[4] This does not mean that the court agrees with attorney Thompson-Burks' legal conclusions. For example, the code provision "an entity that is or may be liable with the debtor" would refer to her individually, as opposed to her filing the claims as a representative of the debtor. Nevertheless, Bankruptcy Rule 3004 gives the debtor a right to file a claim if a creditor does not. Finally, the court is not ruling that Currency is jointly liable with her on these claims, and indeed, disallowed the claims as to Currency, which she did not contest. It merely acknowledges that attorney Thompson-Burks could have reasonably come to the conclusion that it was proper to make the filings in light of her belief that the debtor might also be liable with her on these fees.

6

contesting the trustee's objections to the claims is consistent with full disclosure and not any ulterior motive.[5]

22. The evidence did not establish any misrepresentations of fact. The claims were not made-up; the attorneys' fees were real and primarily incurred in assisting attorney Thompson-Burks with work for the debtor. Attorney Thompson-Burks did not forge anyone's name on the proofs of claim and clearly identified herself as debtor's counsel when filing claims that she believed could be asserted against Currency, as well as her. What we have are some legal conclusions that are probably wrong on both sides. Matt's is incorrect in its assumption that the claims had to be authorized by the creditors or else they were a fraud upon the court. Attorney Thompson-Burks' was probably incorrect in her assumption that Currency might be jointly liable with her for the attorneys' fees.

23. The filing of the bankruptcy petition itself is much more suspect than the filing of the claims. This case was filed to avoid the adverse rulings in state court barring Currency from introducing evidence and testimony to defend Matt's claim for snowplow services. Although the trustee did not object to Matt's claim, the debtor did, and tried to introduce all the evidence in this court that it was twice barred from introducing in state court. Moreover, the debtor's response to Matt's motion to modify the stay was nothing more than an argument on the merits of Matt's claim, attaching much of the material that was otherwise going to be barred in state court.

24. Debtor's motive was confirmed on the record when attorney Thompson-Burks appeared before this court on July 22, 2010.[6] The court inquired as to the status of the state

---

[5] Claims 2-3 were filed on July 24th, 2009. Matt's did not bring a motion to modify the stay until November 5, 2009. Moreover, Matt's has not sought to dismiss this case on the basis that it was nothing more than a two party dispute.

court action and whether attorney Thompson-Burks would again try to challenge the bar orders in state court. She responded that she would, *having tried it before this court and not prevailing.* This frank acknowledgment, coupled with the timing of the bankruptcy filing on the eve of trial, points to only one conclusion: the bankruptcy was filed to avoid the adverse state court rulings.

## Legal Discussion

Matt's motion for sanctions is predicated on Bankruptcy Rule 9011. Rule 9011 is modeled after Fed. R. Civ. P. 11 ("Rule 11") and is "essentially identical" to Rule 11. *In re Park Place Assoc.*, 118 B.R. 613, 616 (Bankr. N.D. Ill. 1990). Thus, the authorities construing Rule 11 are applicable to the case at bar. "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)).

Sanctions under Rule 11 and Rule 9011 serve an important purpose, but should be imposed with care. *Stotler & Co. v. Able*, 870 F.2d 1158, 1167 (7th Cir. 1989). *See also* Fed. R. Civ. P. 11 (1983) advisory committee's note (stating that Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081-82 (7th Cir. 1987) (finding that Rule 11 does not require "scholarly exposition or exhaustive research" and a court must take care not to penalize arguments for seeking evolution of legal principles). "Rule 11 sanctions are only to be granted sparingly, and should not be imposed lightly." *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592-93 (N.D. Ill. 2004), aff'd, 395 F.3d 773 (7th Cir. 2005) (citations omitted).

---

[6] Matt's attorneys failed to appear on status of this motion for sanctions.

Under Rule 9011(b), an attorney or unrepresented party who presents "a petition, pleading, written motion, or other paper" to the court, whether by "signing, filing, submitting, or later advocating" makes four certifications to the court. Three are certifications that the legal assertions in the case have a basis in the law (or a fair argument for the law's modification), and the factual contentions and denials in the case have evidentiary support or are likely to after a reasonable opportunity for investigation. Fed. R. Bankr. P. 9011(b)(2)-(4). The fourth is a certification that the paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]" Fed. R. Bankr. P. 9011(b)(1). *In re Letourneau*, 422 B.R. 132, 138 (Bankr. N.D. Ill. 2010).

Matt's asserts that attorney Thompson-Burks' filing of three claims that were not authorized by the alleged claimants violated these certifications. Moreover her objection to Matt's claim and resistance to Matt's attempts to modify the stay were interposed for the purpose of causing harrassment to Currency's sole creditor and increasing unnecessary delay and costs in relitigating the state court dispute. Matt's appears to argue that each of these acts violated all four certifications; however, sections 9011(b)(2)-(4) are more relevant to the allegation of filing false claims, and 9011(b)(1) is germane to attorney Thompson-Burks' attempt to use this bankruptcy to relitigate a state court action.

## I. Filing Proofs of Claims

Debtors routinely file claims on behalf of creditors who fail to do so, pursuant to § 501[7] of the bankruptcy code and bankruptcy rules 3004 and 3005(a). None of those

---

[7] "In liquidation and individual repayment plan cases, the trustee or the debtor may file a proof of claim under subsection (c) if the creditor does not timely file. The purpose of this subsection is mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor [or an entity jointly liable] would have a greater debt to repay after the case is closed than

9

provisions require the creditor to authorize the filing. So, it is not particularly germane that one law firm did not want a claim filed on their behalf. Attorney Thompson-Burks felt it was important to disclose all the claims for legal services in light of her belief that Currency might also be liable. She cited § 501 and Rrule 3004 as support for her actions. Technically those statutes do not apply, because she filed the claims on the bar date. These provisions permit the debtor or trustee to file claims within 30 days *after* the bar date has passed. If she had filed the claims one day later, she would have a stronger case. However prior to 2005, some courts held that Rrule 3004 allowed trustees or debtors to file such claims *before* the bar date. *See In re Snyder*, 156 B.R. 759, 761 (Bankr. W.D. Pa. 1993) (holding that Rule 3004 did not preclude the Chapter 13 Trustee from filing early). Nevertheless, in 2005, the language that courts relied on to permit the early filing was removed to make it clear that the trustee and debtor should wait until after the bar date passes:

> **Notes of Advisory Committee on 2005 amendments.** The rule is amended to conform to § 501(c) of the Code. Under that provision, the debtor or trustee may file proof of a claim if the creditor fails to do so in a timely fashion. The rule previously authorized the debtor and the trustee to file a claim as early as the day after the first date set for the meeting of creditors under § 341(a). Under the amended rule, the debtor and trustee must wait until the creditor's opportunity to file a claim has expired. Providing the debtor and the trustee with the opportunity to file a claim ensures that the claim will participate in any distribution in the case. This is particularly important for claims that are nondischargeable.
> Since the debtor and trustee cannot file a proof of claim until after the creditor's time to file a claim has expired, the rule no longer permits the creditor to file a proof of claim that will supersede the claim filed by the debtor or trustee. The rule leaves to the courts the issue of whether to permit subsequent amendment of such proof of claim.

---

if the claim were paid in part or in full in the case or under the plan." S. REP. NO. 95-989, at 61 (1978). *In re Mustelier*, 65 B.R. 59, 59 (S.D. Fla. 1986). This is applicable in this case since a corporation does not receive a discharge of its debts. As a result, debtor's counsel should make certain all potential creditors are listed so they receive a distribution from the estate in order to reduce what may later have to be paid by a co-obligor or surety.

While we expect attorneys to be familiar with the current law, this court will not punish counsel for failing to appreciate this slight change in Rrule 3004, particularly when she is not a frequent practitioner in bankruptcy and did not try to multiply proceedings by resisting the trustee's objections to the claims. The better practice would have been to disclose more details in the proofs of claims, such as indicating the legal services were performed for the debtor, but subcontracted by debtor's attorney, and that the claims were being filed as a cautionary measure. However, no evidence was presented to this court that attorney Thompson-Burks concealed or inhibited any investigation into the underlying fact that she, and not the debtor, was the primary obligor on these claims.

Matt's also asserts that attorney Thompson-Burks' personal liability on these claims created a conflict of interest between her and Currency. At trial, debtor's counsel admitted that Currency might owe her money if she were to pay the attorney fees claim. However, there is no requirement that a debtor's attorney be disinterested in a Chapter 7 case, and debtor's counsel can be a creditor of the Chapter 7 debtor. Section 327(a) of the bankruptcy code requires that counsel for debtor be disinterested only in a Chapter 11 where the debtor is debtor in possession. Section 327(a) is not applicable in a Chapter 7 case. *In re Ray*, 314 B.R. 643, 659 (Bankr. M.D. Tenn. 2004). *See also In re Leitner*, 221 B.R. 502, 504 (Bankr. D. Neb. 1998), where the court observed:

> [T]he "disinterested" requirements of §§ 327 and 328 do not apply to an attorney representing the debtor in a Chapter 7 case. The "disinterested" requirements of §§ 327 and 328 of the Bankrutcy Code apply to professionals who provide services to or for the benefit of the bankruptcy estate such as counsel for the standing trustee. These professionals must be retained with court approval and are generally compensated from the property of the bankruptcy estate. Debtor's counsel does not represent the bankruptcy estate in a Chapter 7 case, except by special order of the court. [citation omitted] Mr. Blackwell is not disqualified from representing the Chapter 7 debtors

11

> simply because he is a secured creditor of the debtors respecting unpaid fees for bankruptcy related legal services.
>
> Attorney and clients are almost always in a debtor-creditor relationship respecting the provision of legal services. The fact that a client is indebted to counsel for undisputed charges for services rendered within the scope of the current representation does not provide an ethical or statutory basis for disqualification of counsel.

Matt's incorrectly assumes that attorney Thompson-Burks' potential claim against the debtor, or possible joint liability for attorneys fees incurred for debtor's benefit, amounts to per se improper and sanctionable conduct. The only basis to review counsel's relationship with the debtor in a Chapter 7 case is under § 329 of the bankruptcy code:

> The disgorgement of fees accumulated prior to the order for relief therefore is governed by section 329. The standard applied under sections 327 and 328 is inapposite. In determining whether attorneys' fees are unreasonable or excessive under section 329, courts are guided by section 330 of the Code dealing with compensation of officers. *In re Vann*, 136 B.R. 863, 868 (D. Colo. 1992), *aff'd without opinion*, 986 F.2d 1431 (10th Cir. 1993). Section 330 provides that a reasonable compensation for services rendered by an attorney is "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title. . . ." 11 U.S.C. § 330. *The existence of a conflict of interest is certainly a relevant factor in this analysis and is a justifiable reason to reduce or require disgorgement of attorneys' fees, but reduction or disgorgement is not mandatory. In re McNar*, 116 B.R. at 753. The decision to reduce fees under section 329 is within the sound discretion of the bankruptcy court, which should weigh the equities of the case in determining whether the fees are unreasonable or excessive. *Id.* at 753-54.

*In re Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir. 1993) (emphasis added).

The court is mindful that counsel's potential claim or joint liability with Currency could give rise to an actual conflict under any number of rules contained in the ABA Model Rules of Professional Conduct, as adopted by the State of Illinois. For example, legal work cannot be delegated to another law firm without the client's consent, MODEL RULES OF PROF'L CONDUCT R. 1.2 (2009), or the lawyer's own interests should not have an adverse

12

effect on representation of a client. MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. 10 (2009). There was no specific evidence to support a violation of either of these rules. Debtor's president knew attorney Thompson-Burks obtained assistance from other attorneys and generally consented, even though he could not recall by name all the attorneys hired by her. Moreover, there is no question that counsel jointly liable on a debt with a client could act in an unethical manner that caused all the payment to come from the client instead of counsel. But merely having a claim or joint liability with the Chapter 7 debtor is insufficient to create a conflict of interest warranting a sanction in this case. All Matt's established was that counsel might be a creditor of her client because of unpaid legal fees incurred for that client. That is not per se prohibited in a Chapter 7 case.

In summary, no evidence was presented that attorney Thompson-Burks actively concealed the basis for the proofs of claims she filed. There was sufficient statutory support for her to file these claims as a cautionary measure, although she should have waited one day later. The court does not necessarily agree that she should have filed these claims but sees no harm incurred by playing it safe. The result might be different if debtor's counsel had opposed the trustee's objections to the claims and uncessarily multiplied the proceedings-- but she did not. Accordingly, sanctions will not be imposed under Bankruptcy Rule 9011 for the filing of these claims.

**II. Relitigation of State Court Matters By Filing a Bankruptcy**

The evidence establishes that attorney Thompson-Burks filed this bankruptcy in the hopes of being able to contest Matt's breach of contract claim. Two state court judges had previously barred her from introducing any evidence or witnesses; she filed this case just three days before the trial in state court, and honestly acknowledged her strategy during a

recent status hearing on this matter.[8] Attorney Thompson-Burks attempted to present the evidence she could not offer in state court in both her response to Matt's motion to modify the stay (where her opposition was nothing more than arguing that Matt had no contract claim) and her objection to Matt's claim (an action normally undertaken by the panel trustee because the debtor lacks standing unless there is a surplus estate). She was clearly shopping for a more favorable forum in order to submit evidence in support of Currency's defenses. Without the ability to do so, it is likely Currency will lose the state court action and attorney Thompson-Burks could face a malpractice claim if her actions caused the state court to bar evidence at trial. However, her desire to escape these outcomes is not a proper use of this court. "A debtor cannot use a bankruptcy filing solely as a tactic designed to gain a litigation advantage over a creditor." *In re 652 W. 160th LLC*, 330 B.R. 455, 466 (Bankr. S.D.N.Y. 2005). A bankruptcy filed to avoid adverse results in another forum is bad faith:

> As both the bankruptcy court and the district court noted, the petition was filed when it appeared that a ruling adverse to Dixie was imminent in state court litigation that had been underway for more than two years.
>
> \* \* \* \* \*
>
> It seems clear that Dixie entered bankruptcy to get out of its bad deal. There was testimony that Mr. Bramlett told creditors that the petition was filed to prevent WBHP's purchase, that Dixie did not have financial problems, and that the petition was filed as a "diversionary tactic."

*In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1027-28 (11th Cir. 1989).

In affirming the bankruptcy court's decision to modify the stay and permit a state action to continue, the Seventh Circuit Court of Appeals observed:

> Tenants might be encouraged to file a bankruptcy petition not only to forestall an eviction, but also to seek a more favorable forum for what might otherwise be a foregone conclusion. *See In re United States Brass Co.*, 110 F.3d 1261,

---

[8] The court concludes this was her purpose without regard to her comment in court, which merely reinforces the court's finding that this case was filed to avoid adverse rulings in another forum.

14

> 1265 (7th Cir. 1997) ("The use of the Bankruptcy Code to obtain a favorable forum should not be encouraged."). Williams filed her bankruptcy petition three days before the state court was to hear the merits of any defenses she had.

*In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998).

"Is the purpose of shedding a single creditor with whom one has been embroiled in years of litigation, in which one is presently losing, and in which one expects ultimately to lose, and whom one has the ability, if not the desire, to pay, an improper purpose?" *In re Collins*, 250 B.R. 645, 662 (Bankr. N.D. Ill. 2000). The answer in that case was yes. Where a debtor files a bankruptcy petition as a litigation tactic, having only one creditor and assets that can be liquidated outside bankruptcy, the filing is sanctionable "[g]iven the timing of the bankruptcy, its delay of state court action, and absence of anything to reorganize[.]" *St. Paul Self Storage LP v. Port Authority of the City of St. Paul (In re St. Paul Self Storage LP)*, 185 B.R. 580, 584 (9th Cir. BAP 1995). Moreover, where a debtor's available assets could be distributed outside of bankruptcy, and debtor's Chapter 7 filing only served to benefit the debtor's principals, the principals were sanctioned for filing to hinder, delay, and frustrate the creditor and abusing the bankruptcy process and system. *Trizec Colony Square, Inc. v. Gaslowitz (In re Addon Corp.)*, 231 B.R. 385, 390 (Bankr. N.D. Ga. 1999).

As also noted in the *Collins* case, the Third Circuit Court of Appeals found that a Chapter 11 petition filed under similar circumstances was filed for an improper purpose. The debtor and creditor had been "bickering and squabbling for years in the state courts." *Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 586 (3d Cir. 1985). In that decision the court found that the debtor's filing on the eve of a foreclosure sale "was precipitated, not by a desire, or need for reorganization, but simply to stave off a sheriff's sale on Cinema's state

15

court judgment." *Id.* Commenting that the same considerations apply in a case under Chapter 7, the *Collins* court observed that the petition was filed for an improper purpose because the existing and threatened claims did not constitute an "actual, substantial danger to the economic viability" of the debtor. *Id. See also Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994) (affirming Rule 11 sanctions against a litigant who filed federal pleadings in a bad faith attempt to delay and disrupt state court proceedings). For additional discussion regarding these authorities, consult *In re Collins,* 250 B.R. 645, 663-64 (Bankr. N.D. Ill. 2000).

Applying these principles to the facts here warrants some sanction to deter misuse of the bankruptcy court as a litigation strategy. Attorney Thompson-Burks was boxed in by state court rulings and sought a way out here. Currency was financially strong enough to pay its debts since there are no actual creditors other than Matt's claim for snowplow services, which Currency, but not the trustee, disputes. At the very least, there is no compelling justification to file a Chapter 7 bankruptcy for a corporation that will not receive a discharge of its debts anyway. The only possible reason for filing this bankruptcy was to stall and harrass Matt's prosecution of its claim, which was only three days away from trial when this Chapter 7 case was filed.

Moreover, although sanctions under Bankruptcy Rule 9011 should not be imposed to discourage aggressive advocacy, it is difficult to accept that attorney Thompson-Burks' resort to this forum was primarily motivated by zealous representation of Currency, since her failure to respond to discovery deadlines and orders issued in state court is what drove her here in the first place. The court concludes that she improperly used this forum in an attempt to avoid an adverse result in state court due to her inaction there. While this conduct calls for

sanctions, the court is not prepared to award all of Matt's attorneys' fees incurred in this bankruptcy. A substantial thrust of Matt's quest for sanctions dealt with the issue of filing alleged false claims, which this court rejected earlier. Although Matt's elected to file briefs, there was no extended hearing on modification of the stay, as the court granted Matt's relief when it finally sought it. Moreover, Matt's claim will be resolved in the state court proceeding, as it wanted, notwithstanding debtor's objection to its claim here.

>Rule 9011(c)(2) provides:
>
>(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

The court will impose on attorney Thompson-Burks a sanction in the amount of $3,500.00, which shall be made payable to Matt's attorneys as partial reimbursement for attorneys fees incurred as a result of this bankruptcy. The court is mindful that this amount will not fully compensate Matt's for fees expended. However, Matt's spent too much time focusing on attorney Thompson-Burks' filing of claims, which this court held was not subject to a penalty. The sanction award for attorneys' fees is instead based on a reasonble amount for bringing a motion to modify stay and responding to debtor's objection to claim. (The latter was not really necessary, as shortly after Matt's brought the motion to modify the stay, this court indicated the state court action could proceed to liquidate the claim.) In arriving at the amount of a sanction, the court balanced the need to deter this type of behavior against imposing too great of a penalty and financial hardship for attorney Thompson-Burks.

The court recognizes that the filing of this bankruptcy not only caused needless attorney fees for Matt's but also created an estate, managed by a trustee, whose expenses will reduce whatever assets are available for Matt's if it wins in state court. These administrative expenses could have arguably increased the sanction, but Matt's never moved to dismiss the bankruptcy filing based on bad faith. Apparently, Matt's is content to permit the case to proceed under the direction of the trustee, and it is too late to do so now as the trustee took possession of Currency's assets and is administering the estate, possibly for the sole benefit of Matt's. As a result, the court is not inclined to penalize attorney Thompson-Burks for those adminitrative costs.

## Conclusion

For the foregoing reasons, a judgment of sanctions is entered in favor of Matt's and against attorney Thompson-Burks in the amount of $3,500.00, pursuant to Bankruptcy Rule 9011. All other relief sought is denied.

Date: September 3, 2010

_____
Judge Pamela Hollis